UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

---

MITCHELL J. WOLF,                                        Case No. _____
aka MITCH WOLF,
an individual,                                           *Electronically Filed*
ELAINE WOLF,
an individual,

      Plaintiffs,

v.                                                       JURY DEMAND

HOWARD HANNA COMPANY,
a Pennsylvania corporation,
HANNA HOLDINGS, INC.
a Pennsylvania corporation,
HOWARD HANNA REAL ESTATE SERVICES,
an assumed name of Howard Hanna Company,
THE EDWARD SUROVELL COMPANY,
d/b/a HOWARD HANNA,
an assumed name of Howard Hanna Company,
BARRISTERS OF OHIO, LLC,
a limited liability company,
d/b/a BARRISTERS TITLE AND ESCROW SERVICES,

Jointly and Severally,

      Defendants.

---

JAY S. KALISH & ASSOCIATES, P.C.
Jay S. Kalish (P26301)
Attorneys for Plaintiffs
2000 Town Center
Suite 1900
Southfield, MI 48075
Ph. (248) 932-3000 / Fax (248) 932-8580
Email: jskalish@aol.com

---

**<u>VERIFIED COMPLAINT</u>**

---

## <u>TABLE OF CONTENTS</u>

I.      PRELIMINARY STATEMENT…………………………………………………..        3

II.     JURISDICTION AND VENUE…………………………………………………..        6

III.    THE PARTIES AND MATERIAL NON-PARTIES

        A.      PLAINTIFFS…………………………………………………………        7
        B.      DEFENDANTS………………………………………………………        7
        C.      MATERIAL NON-PARTIES………………………………………..        8

IV.     FACTS GIVING RISE TO PLAINTIFFS' CLAIMS

        A.      OVERVIEW…………………………………………………………        9

V.      LEGAL CLAIMS

        COUNT I…………………………………………………………...        11
        Breach of Contract

        COUNT II…………………………………………………………        13
        Breach of Contract – Failure of Consideration

        COUNT III…………………………………………………………        14
        Bad Faith

        COUNT IV…………………………………………………………        15
        Fraud in the Inducement

        COUNT V………………………………………………………….        17
        Exemplary Damages

        COUNT VI…………………………………………………………        19
        Declaratory Relief

        COUNT VII………………………………………………………..        19
        Unjust Enrichment

        COUNT VIII……………………………………………………………        20
        Specific Performance of Employment Agreement

        Jury Demand……………………………………………………………        22

## I. <u>PRELIMINARY STATEMENT</u>

1.      The Plaintiffs in this action, Mitchell J. Wolf and Elaine Wolf, owned, operated and managed a real estate sales company located in Franklin, Michigan and Birmingham, Michigan known as Cranbrook Realtors, LLC.    (Cranbrook Realtors, LLC is hereinafter sometimes referred to as "Cranbrook").

2.      Cranbrook provided residential real estate services, including brokerage and all related services and products in the State of Michigan.

3.      In connection with its real estate business, Cranbrook utilized the title and closing services of Shield Title Agency, Inc., of which Plaintiff Elaine Wolf was a part owner.  Shield Title Agency, Inc. is hereinafter sometimes referred to as "Shield".

4.      In connection with title and closing services provided to Cranbrook, Plaintiffs received a portion of the net profits which were related to those title and closing services.  Over the last five (5) years, Elaine Wolf received income related to those title and closing services which reached $78,000.00 per year for the year prior to the Closing Date..

5.      Beginning in 2017, the Defendants, HANNA HOLDINGS, INC., HOWARD HANNA REAL ESTATE SERVICES, INC., THE EDWARD SUROVELL COMPANY, d/b/a HOWARD HANNA, (the "Hanna Entities"), BARRISTER'S TITLE AND ESCROW SERVICES, INC., BARRISTER'S TITLE OF OHIO, LLC, (the "Barrister Entities") and Material Non-Parties, FRED CORSI, an individual, and HOWARD W. "HOBY" HANNA, IV, an individual, engaged in activities which were designed to convince the Wolfs to sell Cranbrook to the Hanna Entities.

6.      The activities referenced in paragraph 5 above ultimately resulted in the parties entering into agreements wherein the membership interest in Cranbrook was sold to the Hanna Entities (this transaction is hereinafter referred to generally as the "sale of Cranbrook").  The closing date for the sale

was September 13, 2017, (the "Closing Date").   The documents that were drafted by Defendants'
counsel are hereinafter sometimes referred to as the "Sales Agreements".

7.       Subsequent to the Closing Date, at the direction of the Defendants and the Material Non-Parties,
direct oversight, supervision, and control of the former Cranbrook operation was placed in the hands of
other Material Non-Parties, LISA FLEMING and KRISTINE M. BURDICK.

8.       The Sales Agreements reached between the parties for the sale of Cranbrook had several
components including, without limitation:

      a.       The sale of Cranbrook to the Hanna Entities.

      b.       An initial payment by the Hanna Entities to the Wolfs.

      c.       A future "Earnout" payment by the Hanna Entities to the Wolfs.

      d.       The substitution of the Barrister Entities for Shield as the primary title and closing
company for the purchased entity.

      e.       An employment agreement between Mitch Wolf and the Hanna Entities.

      f.       A lease agreement for the space occupied by Cranbrook.

      g.       A future non-competition and non-solicitation agreement.

9.       The consideration for the Hanna Entities' purchase of Cranbrook was divided into three (3) main
parts:

      A.   PURCHASE OF CRANBROOK - The total purchase price for Cranbrook was to be as much
as $2,590,000.00 and was comprised of the following:

      i.       A Closing Payment of $1,250,000.00 that was paid to the Wolfs on September 13, 2017;

      ii.       An Earnout Payment of as much as $790,000.00 to be paid to the Wolfs within sixty (60)
days following the expiration of the 1st anniversary of the September 13, 2017 closing.

4

iii.    A Synergy Earnout Payment of as much as $550,000.00 to be paid to the Wolfs in quarterly installments of $137,500.00 based on real estate closings handled by the purchaser's affiliate (Barrister's Title).

B.    <u>EMPLOYMENT AGREEMENT</u> - The Sales Agreements contained an employment agreement which provided for the employment of Mitch Wolf by the Hanna Entities for a period of four (4) years.

C.    <u>COVENANT NOT TO COMPETE</u> – The Sales Agreement contained a provision wherein the Wolfs agreed not to directly or indirectly compete with the Hanna Entities or solicit any employee or agent of the Hanna Entities for a period of five (5) years.

10.    As explicitly set forth in the purchase agreement, Elaine Wolf agreed to give up her interest in Shield Title Agency and to utilize the Barrister Entities as the primary title and closing company for the purchased entity.

11.    Following the September 13, 2017 closing, the total unpaid amount of purchase price was as much as $1,340,000.00 (the "Unpaid Purchase Price").

12.    As of the date herein, none of Unpaid Purchase Price has been paid to the Wolfs.

13.    Notwithstanding the clear and unequivocal requirements of Section 3.1(c)(v)(A) of the Sales Agreements, the Purchaser failed to provide the Sellers with a written statement of Purchaser's Earnout Calculation and Synergy Period calculation within 45 calendar days of the completion of the Earnout Year and/or the Synergy Period.

14.    Notwithstanding the clear and unequivocal requirements of Section 3.1(c)(vi) of the Sales Agreement, the Material Non-Parties, Howard W. "Hoby" Hanna, IV, Alfred R. Corsi, Jr., Kristine M. Burdick and Lisa Fleming, and others at their direction, on behalf of the Defendants, intentionally or

negligently, failed to take appropriate management actions which had the effect of reducing the Company Dollar during the Earnout Period and reducing the Synergy Rate during the Synergy Period.

15.     Plaintiffs bring this action seeking to:

      a.      Recover the Unpaid Purchase Price;

      b.      Recover related and resulting damages in order to compensate them for the substantial loss they have sustained as a direct result of the misrepresentations and active mismanagement of the new business by Material Non-Parties Howard W. "Hoby" Hanna, IV and Alfred R. Corsi, Jr. and others at their direction, on behalf of the Hanna Entities and the Barrister Entities that resulted in a reduction of the Company Dollars;  and

      c.      To avoid the restrictive effect of the Covenant not to Compete for failure of consideration.

16.     Plaintiffs' allegations are based upon their personal knowledge as to themselves and their own actions, and upon information and belief as to all other matters.  Plaintiffs' allegations concerning matters other than themselves and their own actions are based upon, among other things;

      (a) review and analysis of documents;

      (b) review and analysis of numerous emails;

      (c) review and analysis of statements and actions of the Defendants and the Material Non-Parties; and

      (d) review and analysis of the statements of others.

## II.  JURISDICTION AND VENUE

17.     This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a)(1) as the Plaintiffs are residents of the State of Michigan, the Defendants' operations are all directed from

their offices in Pennsylvania and Ohio. See *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010), and the amount in controversy exceeds $75,000.00.

18.    Venue is proper in this District pursuant to 28 USC § 1391(c), as many of the acts and omissions charged herein occurred in substantial part in this District and all of the Hanna Defendants as well as the Material Non-Parties are subject to the Court's personal jurisdiction in this District.

19.    The claims asserted herein arise under Sales Agreements.

20.    The claims asserted herein are not based on accounting issues and are not subject to the dispute resolution contained in Section 3.1(c)(v)(B) of the Sales Agreements and therefore, resolution of these claims by this Court is appropriate.  See *Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1, 8 (1st Cir. 2004).

21.    In connection with the acts and conduct alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communication, and the facilities of national real estate markets.

### III.  THE PARTIES AND MATERIAL NON-PARTIES

#### A.  Plaintiffs

22.    The Plaintiffs are as follows:

(a)    Mitch Wolf is an individual residing at 2079 Long Lake Shore Dr., West Bloomfield, MI 48323.

(b)    Elaine Wolf is an individual residing at 2079 Long Lake Shore Dr., West Bloomfield, MI 48323.

23.    Mitch Wolf is an experienced real estate broker, duly licensed by the State of Michigan for 45 years, and was the qualifying real estate broker at Cranbrook Realtors, LLC.

24.     Elaine Wolf was the owner of 100% of the membership interest of Cranbrook Realtors, LLC. and the former owner of a portion of Shield Title Agency, Inc.

## B.  Defendants

25.     The Defendants are as follows:

(a)     Defendant Howard Hanna Company was organized as a Pennsylvania corporation on April 29, 1977 with its principal offices located at 119 Gamma Dr., Pittsburgh, PA 15238.

(b)     Defendant Hanna Holdings, Inc. was organized as a Pennsylvania corporation on July 1, 1981 with its principal offices located at 119 Gamma Dr., Pittsburgh, PA 15238.

(c)     Defendant Howard Hanna Real Estate Services is an assumed name of the Howard Hanna Company with its principal offices located at 5501 Baum Blvd., Pittsburgh, PA 15232.

(d)     Defendant Edward Surovell Company was a Michigan real estate company that was merged into the Howard Hanna Company in 2012.  The officers and directors of Edward Surovell Company are all located at 119 Gamma Dr., Pittsburgh, PA 15238.

(e)     Barrister's Title and Escrow Services is an assumed name of the Barristers of Ohio, LLC with its principal offices located at 6000 Parkland Blvd., Mayfield Heights, OH 44124.

26.     The entities listed in paragraph 25(a),(b),(c) and (d) above are hereinafter referred to as the "Hanna Entities".

27.     The entities listed in paragraph 25(e) above are hereinafter referred to as the "Barrister Entities".

## C.  Material Non-Parties

28.     The Material Non-Parties are as follows:

(a)     Howard W. "Hoby" Hanna, IV is an individual with his principal office located at 6000 Parkland Blvd., Mayfield Heights, OH 44124.  He is the President of the Hanna Entities.

(b)     Kristine M. Burdick is an individual with her principal office located at 6000 Parkland Blvd., Mayfield Heights, OH 44124.  She is the President of the Midwest Region of Howard Hanna Real Estate Services.

(c)     Lisa A. Fleming is an individual with her principal office located at 1884 W. Stadium Blvd., Ann Arbor, MI 48103.  She is the Vice President and Regional Manager, Michigan Region of Howard Hanna Real Estate Services.

(d)     Alfred R. Corsi, Jr. is an individual with his principal office located at 800 West St. Clair Ave., Suite 400, Cleveland, OH 44113 who is the president and CEO of Barristers of Ohio, LLC.

## IV.  <u>FACTS GIVING RISE TO PLAINTIFFS' CLAIMS</u>

**A.     <u>Overview</u>**

29.     On the Closing Date, following extensive negotiation and several versions of extensive paperwork, the parties executed the following purchase documents:

(a)     Membership Interest Purchase Agreement w/ Non Competition and Non-Solicitation Covenants

(b)     Employment Agreement

(c)     Assignment of Equity Interests

(d)     Lease Agreement

30.     The aforementioned documents are hereinafter referred to as the "Purchase Documents" and are attached hereto as Exhibits A, B, C, and D.

31.     The Purchase Documents provided for the sale of Cranbrook, all of its assets and all of its interests, to the Hanna Entities in exchange for an immediate partial payment of the Purchase Price and future payments of the remaining portion of the Purchase Price based on future operations of the purchaser.

32.     Explicitly set forth in the Purchase Documents was the requirement that Elaine Wolf give up her interest in Shield Title Agency and utilize the Barrister Entities as the primary title and closing services for the new entity.

33.     In addition to the Purchase Price, the purchaser agreed to enter into lease agreements for the premises occupied by Cranbrook, and to employ Mitch Wolf at a rate of compensation based, in part, on the profitability of the new entity.

34.     Subsequent to the Closing Date, management of the new entity's operations was supervised and managed by Material Non-Parties Howard W. "Hoby" Hanna, IV, Kristine M. Burdick, Lisa A. Fleming and others in their employ.

35.     On information and belief, the portion of the new business related to the operation of Barrister Entities was supervised and managed by Material Non-Party Alfred R. Corsi, Jr. and others at his direction.

36.     On information and belief, that portion of the new business related to the operation of Howard Hanna Real Estate was supervised and managed by Material Non-Parties Howard W. "Hoby" Hanna, IV, Kristine M. Burdick, Lisa A. Fleming and others at their direction.

37.     As set forth in Paragraphs 9. A. ii. and iii. above, a significant portion of the consideration agreed to in connection with the Wolfs' sale of Cranbrook was dependent on an appropriate transition from Cranbrook to Howard Hanna Real Estate and the efficient and proper operation of the new Howard Hanna Real Estate business and Barrister's Title business.

38.     Notwithstanding the purchaser's clear and unambiguous obligations contained in the Purchase Agreements, or which could be reasonably inferred from the Purchase Agreements, the Defendant Hanna Entities, the Barrister Entities and the Material Non-Parties, either intentionally or negligently, did the following after the Closing Date:

(a)     Failed to take appropriate steps in managing the announcement of Howard Hanna's acquisition of Cranbrook.

(b)     Failed to take appropriate steps to manage the transition from Cranbrook to Howard Hanna which resulted in the loss of 9 agents and attendant revenue.

(c)     Failed to replace the Birmingham South manager following that individual's resignation almost immediately after the Closing Date.  The failure to replace the Birmingham South manager resulted in a loss of substantial revenue derived from that office.

(d)     Failed to adequately manage the Birmingham South location following the manager's resignation.  The failure to adequately manage the Birmingham South office resulted in a loss of substantial revenue derived from that office.

(e)     Failed to recruit new agents for the Birmingham South Office which resulted in the continuing loss of substantial revenue derived from that office.

(f)     Failed to provide adequate title services and closing services by the Barrister Entities resulting in a continuing refusal by agents to utilize the Barrister Entities for title and closing services which resulted in the continuing loss of substantial revenue derived from those services.

(g)     Failed to adequately account for the uniqueness of the Oakland County real estate market resulting in the significant loss of revenue derived from that market.

## V. LEGAL CLAIMS

### COUNT I
### Breach of Contact

39.     Plaintiffs repeat and incorporate by reference each allegation of the prior paragraphs as if fully set forth herein.

40.     The Purchase Agreements between the Plaintiffs and the Hanna Entities constitute and valid and binding contract for the sale of Cranbrook.

41.     The Plaintiffs carried out all of their duties under the Purchase Agreements, both stated and implied, and have performed all of their obligations under the Purchase Agreements.

42.     The Plaintiffs have advised the Hanna Entities and the Barrister Entities, along with the Material Non-Parties, on several occasions, both in writing and through other means, that the Hanna Entities have failed to honor the continuing obligations under the Purchase Agreements.

43.     The failure of the Hanna Entities to failed to honor the continuing obligations under the Purchase Agreements and abide by the terms of the Purchase Agreements constitutes a breach of those agreements.

44.     The aforementioned breach of the Purchase Agreements has resulted in damage to the Plaintiffs' in the amount of $1,340,000.00 plus interest.

        WHEREFORE, Plaintiffs pray for the following relief:

        A.      Judgment against the Defendants, HOWARD HANNA COMPANY, a Pennsylvania corporation, HANNA HOLDINGS, INC. a Pennsylvania corporation, HOWARD HANNA REAL ESTATE SERVICES, an assumed name of Howard Hanna Company, THE EDWARD SUROVELL COMPANY, d/b/a HOWARD HANNA, an assumed name of Howard Hanna Company, jointly and severally, in the amount of $1,340,000.00, plus interest; and

        B.      Award Plaintiffs reasonable costs and attorney fees; and

        C.      Grant any other and further relief that the Court deems fit and proper.

## COUNT II
**Breach of Contract - Failure of Consideration**

45.    Plaintiffs repeat and incorporate by reference each allegation of the prior paragraphs as if fully set forth herein.

46     The Purchase Agreements between the Plaintiffs and the Hanna Entities constitute and valid and binding contract for the sale of Cranbrook.

47.    The Plaintiffs have carried out all of their duties under the Purchase Agreements, both stated and implied, including, without limitation, Elaine Wolf surrendering her interest in the profitable Shield Title Agency in order to utilize the Barrister Entities as the primary title and closing services for the new entity.

48.    Defendant Hanna Entities and the Barrister Entities have failed to provide adequate title services and closing services by Barrister's Title which has resulted in a continuing refusal by agents to utilize Barrister's Title.

49.    The continuing refusal by agents to utilize Barrister's Title and the Plaintiff Elaine Wolf's loss of her interest in Shield Title Agency without the consideration contained in the Purchase Agreement has caused permanent damage to Plaintiffs.

50.    The aforementioned breach has resulted in damages to the Plaintiffs in the amount of $78,000.00 per year for five (5) years or $390,000.00.

       WHEREFORE, Plaintiffs pray for the following relief:

       A.    Judgment against the Defendants, HOWARD HANNA COMPANY, a Pennsylvania corporation, HANNA HOLDINGS, INC. a Pennsylvania corporation, HOWARD HANNA REAL ESTATE SERVICES, an assumed name of Howard Hanna Company, THE EDWARD SUROVELL COMPANY, d/b/a HOWARD HANNA, an assumed name of Howard Hanna Company, BARRISTERS

OF OHIO, LLC, a limited liability company, d/b/a BARRISTERS TITLE AND ESCROW SERVICES,

jointly and severally, in the amount of $390,000.00, plus interest; and

 B.  Award Plaintiffs reasonable costs and attorney fees; and

 C.  Grant any other and further relief that the Court deems fit and proper.

## COUNT III
### Bad Faith

51. Plaintiffs repeat and incorporate by reference each allegation of the prior paragraphs as if fully set forth herein.

52. The Purchase Agreements between the Plaintiffs and the Hanna Entities constitute and valid and binding contract for the sale of Cranbrook.

53. The Plaintiffs carried out all of their duties under the Purchase Agreements, both stated and implied, and have performed all of their obligations under the Purchase Agreements.

54. Prior to the date of this complaint, the Plaintiffs advised the Hanna Entities, along with the Material Non-Parties, on several occasions, both in writing and through other means, that the Hanna Entities were failing to honor the obligations imposed on them under the Purchase Agreements, including, without limitation, the following::

 (a) Failure to take appropriate steps in managing the announcement of Howard Hanna's acquisition of Cranbrook.

 (b) Failure to take appropriate steps to manage the internal transition from Cranbrook to Howard Hanna.

 (c) Failure to replace the Birmingham South manager.

 (d) Failure to provide management of the Birmingham South Office which resulted in the continuing loss of substantial revenue derived from that office.

(e)     Failure to provide adequate title services and closing services by Barrister's Title which has resulted in a continuing refusal by agents to utilize Barrister's Title which has resulted in the continuing loss of substantial Synergy Income.

(f)     Failure to adequately market the Howard Hanna brand in the Oakland County real estate market resulting in the significant loss of revenue derived from that market.

55.     As stated above, the stated actions of the Hanna Entities and the Barrister Entities, as carried out by the Material Non-Parties, constitute violations of basic implied covenant of good faith and fair dealing.

56.     The tortious actions and behavior of the Defendants, which resulted in the loss of a family business, and the loss of significant income to be derived from the sale of that family business, constitute bad faith and/or intentional breaches of the purchasers' contractual obligations and thus punitive damages should be awarded in an amount supported by the evidence in this case.

WHEREFORE, Plaintiffs pray for the following relief:

A.     Judgment against the Defendants, HOWARD HANNA COMPANY, a Pennsylvania corporation, HANNA HOLDINGS, INC. a Pennsylvania corporation, HOWARD HANNA REAL ESTATE SERVICES, an assumed name of Howard Hanna Company, THE EDWARD SUROVELL COMPANY, d/b/a HOWARD HANNA, an assumed name of Howard Hanna Company, BARRISTERS OF OHIO, LLC, a limited liability company, d/b/a BARRISTERS TITLE AND ESCROW SERVICES, jointly and severally, for punitive damages in the amount in excess of $75,000.00 as supported by the evidence; and

B.     Award Plaintiffs reasonable costs and attorney fees; and

C.     Grant any other and further relief that the Court deems fit and proper.

15

## COUNT IV
### Fraud in the Inducement

57.    Plaintiffs repeat and incorporate by reference each allegation of the prior paragraphs as if fully set forth herein.

58.    As set forth above, the Synergy Earnout Payment comprised a significant component of the purchase price for Cranbrook.

59.    During the negotiations that led up to the sale of Cranbrook, the Material Non-Parties, on behalf of the Defendants, repeatedly made statements and representations that they had the skills and expertise to competently operate Barrister's Title Company.

60.    The above referenced statements by the Material Non-Parties, on behalf of the Defendants, were known to be untrue when made.

61.    The above referenced statements and representations were made to induce Elaine Wolf to give up her interest in Shield Title and to use Barristers Title as the new entity's primary title and closing service.

62.    The Defendants lacked the ability, experience and expertise to operate Barristers Title as the new entity's primary title and closing service which resulted in an inability to provide said services.

63.    The Defendants' inability to provide the primary title and closing service resulted in substantial damage to Elaine Wolf.

64.    Elaine Wolf relied on the statements and representations of Material Non-Parties, on behalf of the Defendants and has been injured by the aforementioned statements and misreprentations.

WHEREFORE, Plaintiffs pray for the following relief:

A.    Judgment against the Defendants, HOWARD HANNA COMPANY, a Pennsylvania corporation, HANNA HOLDINGS, INC. a Pennsylvania corporation, HOWARD HANNA REAL

ESTATE SERVICES, an assumed name of Howard Hanna Company, THE EDWARD SUROVELL COMPANY, d/b/a HOWARD HANNA, an assumed name of Howard Hanna Company, BARRISTERS OF OHIO, LLC, a limited liability company, d/b/a BARRISTERS TITLE AND ESCROW SERVICES, jointly and severally, for damages in an amount in excess of $75,000.00 as supported by the evidence; and

      B.     Award Plaintiffs reasonable costs and attorney fees; and

      C.     Grant any other and further relief that the Court deems fit and proper.

**COUNT V**
**Exemplary Damages**

65.    Plaintiffs repeat and incorporate by reference each allegation of the prior paragraphs as if fully set forth herein.

66.    The Purchase Agreements between the Plaintiffs and the Hanna Entities constitute and valid and binding contract for the sale of Cranbrook.

67.    The Plaintiffs carried out all of their duties under the Purchase Agreements, both stated and implied, and have performed all of their obligations under the Purchase Agreements.

68.    Prior to the date of this complaint, the Plaintiffs advised the Hanna Entities and the Barrister Entities, along with the Material Non-Parties, on several occasions, both in writing and through other means, that the Hanna Entities and the Barrister Entities were failing to honor the obligations imposed on them under the Purchase Agreements, to wit:

      (a)     Failure to take appropriate steps in managing the announcement of Howard Hanna's acquisition of Cranbrook.

      (b)     Failure to take appropriate steps to manage the internal transition from Cranbrook to Howard Hanna.

17

(c)     Failure to replace the Birmingham South manager.

(d)     Failure to provide management of the Birmingham South Office which resulted in the continuing loss of substantial revenue derived from that office.

(e)     Failure to provide adequate title services and closing services by Barrister's Title which has resulted in a continuing refusal by agents to utilize Barrister's Title which has resulted in the continuing loss of substantial Synergy Income.

(f)     Failure to adequately market the Howard Hanna brand in the Oakland County real estate market resulting in the significant loss of revenue derived from that market.

69.    The actions of the Defendants, which resulted in which resulted in the loss of a family business, and the loss of significant income to be derived from the sale of that family business, constitute bad faith and/or intentional breaches of the purchasers' contractual obligations and thus exemplary damages should be awarded in an amount supported by the evidence in this case.

70.    The actions of the Defendants, as well as the Material Non-Parties, were either designed to or resulted in outrage, humiliate and embarrassment of the Plaintiffs and as such should be compensated by separate award of exemplary damages in an amount in excess of $75,000.00 as supported by the evidence in this case.

WHEREFORE, Plaintiffs pray for the following relief:

A.     Judgment against the Defendants, HOWARD HANNA COMPANY, a Pennsylvania corporation, HANNA HOLDINGS, INC. a Pennsylvania corporation, HOWARD HANNA REAL ESTATE SERVICES, an assumed name of Howard Hanna Company, THE EDWARD SUROVELL COMPANY, d/b/a HOWARD HANNA, an assumed name of Howard Hanna Company, BARRISTERS OF OHIO, LLC, a limited liability company, d/b/a BARRISTERS TITLE AND ESCROW SERVICES,

jointly and severally, for punitive damages in the amount in excess of $75,000.00 as supported by the evidence; and

      B.     Award Plaintiffs reasonable costs and attorney fees; and

      C.     Grant any other and further relief that the Court deems fit and proper.

<u>COUNT VI</u>
**Declaratory Relief (Covenant Not to Compete or Solicit)**

71.    Plaintiffs repeat and incorporate by reference each allegation of the prior paragraphs as if fully set forth herein.

72.    As set forth above, the consideration for the Covenant Not To Compete contained in the Purchase Agreements wherein the Wolfs agreed not to directly or indirectly compete with the Hanna Entities or solicit any employee or agent of the Hanna Entities for a period of five (5) years was the Hanna Entities' payment of the Purchase Price.

73.    The Hanna Entities have failed and refused to pay the Plaintiffs the Purchase Price.

74.    Accordingly, there has been a failure of the consideration for the Covenant Not To Compete.

75.    A judicial determination resolving this issue is necessary and appropriate at this time.

    WHEREFORE, Plaintiffs pray for the following relief:

      A.     Judgment of Declaratory Relief against the Defendants, HOWARD HANNA COMPANY, a Pennsylvania corporation, HANNA HOLDINGS, INC. a Pennsylvania corporation, HOWARD HANNA REAL ESTATE SERVICES, an assumed name of Howard Hanna Company, THE EDWARD SUROVELL COMPANY, d/b/a HOWARD HANNA, an assumed name of Howard Hanna Company, determining that the Covenant Not To Compete contained in the Purchase Agreements is void and unenforceable against the Plaintiffs.; and

      B.     Award Plaintiffs reasonable costs and attorney fees; and

C.      Grant any other and further relief that the Court deems fit and proper.

## COUNT VII
### Unjust Enrichment

76.     Plaintiffs repeat and incorporate by reference each allegation of the prior paragraphs as if fully set forth herein.

77.     As a result of the conduct described above, Defendants have been unjustly enriched at the expense of the Plaintiffs.

78.     Defendants should be required to disgorge all profits, monies and gains which they have obtained or will unjustly obtain in the future at the expense of the Plaintiffs, and a constructive trust should be imposed thereon for the benefit of the Plaintiffs.

WHEREFORE, Plaintiffs pray for the following relief:

A.      Judgment against the Defendants, HOWARD HANNA COMPANY, a Pennsylvania corporation, HANNA HOLDINGS, INC. a Pennsylvania corporation, HOWARD HANNA REAL ESTATE SERVICES, an assumed name of Howard Hanna Company, THE EDWARD SUROVELL COMPANY, d/b/a HOWARD HANNA, an assumed name of Howard Hanna Company, requiring the Defendant to disgorge all profits, monies and gains which Defendants have obtained or will unjustly obtain in the future at the expense of the Plaintiffs, and impose a constructive trust for the benefit of the Plaintiffs; and

B.      Award Plaintiffs reasonable costs and attorney fees; and

C.      Grant any other and further relief that the Court deems fit and proper.

## COUNT VIII
### Specific Performance of the Employment Agreement

79.     Plaintiffs repeat and incorporate by reference each allegation of the prior paragraphs as if fully set forth herein.

80.     As set forth above, the Employment Agreement, attached hereto as Exhibit b, constitutes a valid and enforceable contract between the Plaintiff, Mitch Wolf and the Hanna Entities.

81.     The Employment Agreement provides for Mitch Wolf's employment by the Hanna Entities for a period ending on the fourth anniversary of the Closing date.

82.     The Employment Agreement provides, inter alia, for Mitch Wolf to receive an annual Base Salary of $65,000.00 during years 1, 2, 3 and 4, plus a bonus of $60,000.00 per year annually for years 1 and 2, plus 20% of the net profit of the Franklin Office for years 3 and 4.

83.     Based on the performance of the parties during the 17 months that have elapsed since the Closing Date, Plaintiffs submit that the above formula would result in an annualized salary, including bonus and commissions of $120,000.00 per year or a total of $480,000.00 for the 4 year period.

84.     The unused portion of the Employment Agreement is currently 31 months which equals approximately $310,000.00.

85.     The unused portion of the Employment Agreement constitutes a significant portion of the Sales Agreement and additional consideration for the sale of Cranbrook.

86.     Plaintiffs will be irreparably damaged should the Employment Agreement not be enforced by this Court.

        WHEREFORE, Plaintiffs pray for judgment of specific performance against the Defendants, HOWARD HANNA COMPANY, a Pennsylvania corporation, HANNA HOLDINGS, INC. a Pennsylvania corporation, HOWARD HANNA REAL ESTATE SERVICES, an assumed name of Howard Hanna Company, THE EDWARD SUROVELL COMPANY, d/b/a HOWARD HANNA, an assumed name of Howard Hanna Company requiring those defendants to abide by the provisions of the Employment Agreement.

I declare that the statements above are true to the best of our information, knowledge and belief.

_/s/  Mitchell J. Wolf_____.
MITCHELL J. WOLF


_/s/  Elaine Wolf_____.
ELAINE WOLF

STATE OF MICHIGAN      )
                            )ss
COUNTY OF OAKLAND   )

On this 4th day of March, 2019, before me, a Notary Public, in and for said County and State, personally appeared the above named Plaintiffs, Mitchell Wolf and Elaine Wolf, who first being duly sworn, depose and say the they have read the foregoing complaint by them subscribed and that they know the contents thereof to be true to the best of their knowledge except as to matters stated to be alleged on information and belief and as to those matters they believe them to be true.

JAY S. KALISH & ASSOCIATES, P.C.

_/s/ Jay S. Kalish_____.
JAY S. KALISH
Attorney for Plaintiffs
2000 Town Center, Suite 1900
Southfield, MI 48075
(248) 932-3000
_jskalish@aol.com_
MI Bar Number: P26301

Subscribed and sworn to before me
this 4th day of March, 2019
_/s/  Mimi D. Kalish_____.
Mimi D. Kalish, Notary Public
Oakland County, MI
My commission expires 2/27/2020

## JURY DEMAND

Pursuant to Rule 38, Federal Rule of Civil Procedure, Plaintiffs hereby demand a trial by jury in the above captioned action of all issues triable by jury.

JAY S. KALISH & ASSOCIATES, P.C.

_/s/ Jay S. Kalish_____.
JAY S. KALISH
Attorney for Plaintiffs
2000 Town Center, Suite 1900
Southfield, MI 48075
(248) 932-3000
_jskalish@aol.com_
MI Bar Number: P26301

Dated: March 4, 2019